UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY FLEEKS,

      Plaintiff,                          Civil Action No. 08-13135

v.                                   HON. GEORGE CARAM STEEH
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ashley Fleeks brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Childhood Supplemental Security Income and Adult Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment as to claims for both childhood and adult benefits DENIED.

## PROCEDURAL HISTORY

Plaintiff, born March 1, 1988, originally applied for Childhood Supplemental Security Income on October 13, 2000 (Tr. 19).  Administrative Law Judge ("ALJ") B. Lloyd

Blair denied the claim on March 29, 2002 (Tr. 19). Plaintiff reapplied for childhood benefits on July 3, 2002, also filing for Adult Supplemental Security Income ("SSI") on March 7, 2006 (Tr. 66). On June 6, 2006, ALJ Earl A. Witten presided at Plaintiff's administrative hearing, held in Flint, Michigan (Tr. 158-180). Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 161-166, 167-170) as did her mother, Linda Fleeks (Tr. 166-167), Medical Expert ("ME") William Weil, M. D. (Tr. 171-175) and Vocational Expert ("VE") Heather Benton (Tr. 175-178). On March 13, 2007, ALJ Witten found Plaintiff not disabled both before and after her 18th birthday (Tr. 33). On May 22, 2008, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on July 22, 2008.

## BACKGROUND FACTS

Plaintiff, born March 1, 1988, was 19 when ALJ Witten issued his decision (Tr. 35). She graduated from high school and worked part time as a bagger and an assistant customer service manager (Tr. 165). She alleges disability as a result of depression and the absence of a left arm below the elbow (Tr. 24).

### A.      Plaintiff's Testimony

Plaintiff testified that the absence of a left forearm created difficulty playing lacross, volleyball, basketball, swimming, and football, adding that she was unable participate in her school band's flag team activities (Tr. 162-163). She testified further that she required help fixing her hair, cutting her food, putting on jewelry, as well as occasional help getting dressed (Tr. 164).

Plaintiff, a recent high school graduate, reported that she planned to attend Lansing Community College in the fall with a major in interior design (Tr. 164). She acknowledged that she currently worked 17-20 hours each week as an assistant customer service manager at Kroger which required her to complete paperwork and answer the telephone (Tr. 165). She opined that she was "not really sure" whether she could perform the manager position for 40 hours each week, alleging that her current part-time work load created arm fatigue (Tr. 166).

Plaintiff's mother, Linda Meeks, interjected briefly, stating that her daughter experienced periodical "mental breaks," requiring someone to "calm her" (Tr. 166-167).

Plaintiff then resumed her testimony, stating that she had been fitted with a prosthesis so she could participate in her church's step team and dance team, but had not received it, adding that she had used prostheses in the past (Tr. 167). She acknowledged that without the aid of a prosthesis, she was able to play soccer, swim (float), and ride her bike (Tr. 169-170).

### B. Medical Expert Testimony

Pediatrician William B. Weil testified that Plaintiff experienced "a congenital absence of the left forearm, adding that it did not meet or equal the functional equivalent of a listed impairment (Tr. 174). He opined that Plaintiff experienced a marked degree of limitation in "moving about and manipulating objects, but "less than marked" limitations in caring for herself, acquiring and using information, attending and completing tasks, interacting and relating with others, and in physical well-being (Tr. 175).

### C.      Medical Evidence[1]

### 1.  Treating Sources

May 1996 treating notes by Barbara Kaniewski, O.T.R., show that Plaintiff, then 8,

requested a replacement for an earlier-fitted prothesis (Tr. 114).  Plaintiff reported that

despite not having used a prothesis recently, she was able to tie her shoes, dress

independently, manage fasteners, "don and doff . . . earrings," bike, and rollerblade (Tr. 114).

July 1996 treating notes show that Plaintiff demonstrated good posture with a "good range"

of shoulder motion and was "able to braid her [mother's] hair . . . using her left below elbow

residual limb and her right hand" (Tr. 114).  In March 2004, her biology teacher noted that

she was able to "accommodate any difficulties" and was "very well adjusted" (Tr. 132).  The

biology teacher also noted that she saw "no psychological, emotional or mental conditions

that differ[ed] from her peer group" (Tr. 134).

### 2.  An Assessment Performed on Behalf of the SSA

In March 2004, a Childhood Disability Evaluation Form completed on behalf of the

SSA found that while the absence of a left arm below the elbow qualified as a "severe"

impairment, Plaintiff was not disabled (Tr. 138).  The Assessment noted that Plaintiff did not

experience speech or language difficulties and that the staff at the school made

accommodations for the congenital impairment (Tr. 140).  The Assessment, noting that

---

[1]Plaintiff has stipulated that consideration of her medical condition prior to ALJ
Blair's March 29, 2002 non-disability finding is barred by *res judicata* and included here
for background purposes only (Tr. 159).

Plaintiff was reportedly "embarrassed to use" her prosthesis, observed that she was nonetheless able to care for herself (Tr. 143). In March 2005, Mary Williams Clark, M.D., reported Plaintiff expressed interest in doing basketball, lacrosse, and volleyball (Tr. 153). A May 2005 imaging study of Plaintiff's spine showed "a very mild scoliosis" (Tr. 150). In November 2005, Dr. Clark, noting that Plaintiff was currently step dancing and "part of the flag team with the band," opined that Plaintiff was "a good candidate for either [a] body powered or myoelectric prosthesis" (Tr. 152).

### D.      Vocational Expert Testimony

ALJ Witten posed the following question to VE Heather Benton:

> "Now, assume I find the Claimant's residual functional capacity as such that she has the maximum sustained exertional work capacity to perform work which allowed her to lift 20 pounds occasionally and 10 pounds on a routine basis with the right upper extremity, use of the left upper extremity only for support on occasion for the right upper extremity, able to stand and to walk six hours out of an eight hour day, able to sit at least six hours out of an eight hour day. Given those restrictions, would there be jobs for a younger individual?

(Tr. 367). The VE replied that given the above limitations, Plaintiff could perform the exertionally *light*, unskilled work of an interviewer (2,300 positions in the regional economy), information clerk (500), library clerk (1,000), duplicating machine operator (300), and mail clerk (1,200) as well as the *sedentary* positions of interviewer (700), information clerk (500), accounting clerk (2,500), and investigator (1,400) (Tr. 176-177).[2]

---

[2]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50

### E.  ALJ Witten's Decision[3]

Citing Plaintiff's medical records, ALJ Witten found that Plaintiff experienced the severe impairment of "congenital transverse proximal third forearm absence" (Tr. 24).  The ALJ, finding that both before and after her 18th birtday, Plaintiff experienced marked limitations in "moving about and manipulating objects" but otherwise non-marked limitations, determined that her condition did not meet or equal an impairment found in 101.05 or any other of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1, Part A or B (Tr. 25, 33).  He found that  Plaintiff  retained the following residual functional capacity ("RFC") limiting her to

> "Lifting or carrying more than 20 pounds occasionally or more than 10 pounds frequently with the right upper extremity; using the left upper extremity for anything but a support function.  The claimant is able to sit at least 6 hours in an 9-hour workday, and stand and/or walk 6 hours in an 8-hour workday. Accordingly, the claimant has a residual functional capacity for a range of light work"

(Tr. 33).    Adopting the VE's job numbers, *supra*, the ALJ found that subsequent to Plaintiff's 18th birthday, she could  perform the exertionally light work of an interviewer, information clerk, library clerk, duplicating machine operator, and mail clerk as well as the sedentary work of an investigator, information clerk, account clerk, and investigator (Tr. 34).

---

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[3]Because Plaintiff's present arguments do not dispute ALJ Blair's March 29, 2002 non-disability findings, the earlier administrative decision is omitted from discussion here.

The ALJ found that Plaintiff's allegations of disability both before and after her 18th birthday were "not entirely credible" (Tr. 27, 33).  He noted that prior to Plaintiff's 18th birthday, she wrote, read, studied, swam, biked, rollerbladed, and played soccer without difficulty (Tr. 26).  He also observed that Plaintiff's first work position required her to bag and transport groceries, noting that she used a computer, wrote letters, performed household chores, and socialized with friends (Tr. 27).  In support of his non-disability finding for the period subsequent to her 18th birthday, the ALJ observed that "[w]ith the exception of her left upper extremity, the claimant is physically health[y] and manifests no orthopedic, neurological, pulmonary or vascular affliction. . . . [She] engages in activities and maintains a lifestyle that is inconsistent with assertions that she is unable to perform any substantial gainful activity" (Tr. 33).  Noting further that Plaintiff did not exhibit a "limitation related to her emotional status," the ALJ rejected her allegations of a mental impairment (Tr. 33).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

### A.  Childhood Benefits

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[4]  In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a).  In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

---

[4]Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for yourself; and,

(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added). 20 C.F.R. § 416.926a(e)(3).

## B. Adult Benefits

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."  *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Childhood Benefits - Marked Limitations

Plaintiff, noting that the ALJ found she experienced marked limitations in "moving about and manipulating objects," argues that the ALJ erred in determining that she had less than marked limitations in the ability to care for herself.  *Plaintiff's Brief* at 6-9, *Docket #8*. Pursuant to 20 C.F.R. § 416.926a(b)(1), she contends that her two marked limitations entitle her to childhood benefits. *Brief* at 9.

Contrary to this argument, substantial evidence easily supports the ALJ's finding that Plaintiff's ability to care for herself was not markedly limited.  Plaintiff's claim that she required her mother or brother's help in dressing and grooming herself (Tr. 163-164) stands

-10-

directly at odds with treating medical source observations that she was able to tie her shoes,

dress independently, manage fasteners, "don and doff . . . earrings," and braid her mother's

hair without the aid of a prosthesis[5] (Tr. 114).  The treating source report is consistent with

a March, 2004 assessment completed by Plaintiff's biology teacher showing that she was

adept in accommodating physical limitations to the task at hand (Tr. 132).  Dr. Weil testified

at the hearing that based on Plaintiff's testimony and treating records, her limitations in self

care were "less than marked" (Tr. 175).

Likewise, Plaintiff's claim that she has experienced psychological problems arising

from the congenital defect is completely unsupported by record evidence. Her biology

teacher's March, 2004 assessment noted the absence of "psychological, emotional or mental

conditions," and that Plaintiff's behavior was consistent with that of her contemporaries (Tr.

134).  The absence of a psychological limitation is further supported by Plaintiff's own

admission that while attending high school, she worked 17-20 each week, receiving a

promotion to assistant customer service manager at a local supermarket (Tr. 165).  None of

Plaintiff's treating records suggest a psychological limitation.  Because substantial evidence

amply supports the ALJ's finding that Plaintiff was markedly limited only in  "moving about

and manipulating objects," the finding that Plaintiff was not disabled at the third step of the

administrative analysis should not be reversed.

---

[5]While these observations predate Plaintiff's current application for benefits,
she has presented no evidence to show that her ability to care for her own needs has
deteriorated since the May, 1996 assessment.

**B. Adult Benefits - SSR 00-4p**

Plaintiff also argues that the ALJ erred by failing to ask the VE if her testimony conformed to the information found in the Dictionary of Occupational Titles ("DOT"). *Brief* at 10.

SSR 00-4p provides in pertinent part:

"When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."

2000 WL 1898704, at *4. "In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided 'conflicts with [the] information provided in the DOT.'" *Lindsley v. Commissioner of Social Sec*. 560 F.3d 601, 603 (6ᵗʰ Cir. 2009)(*citing* SSR 00-4p, 2000 WL 1898704, at *4). "ALJs must also 'obtain a reasonable explanation for ... apparent conflict[s]' if the VE's evidence "appears to conflict with the DOT." *Id.* (*citing* 2000 WL 1898704, at *4).

A reading of the administrative hearing transcript shows that the ALJ failed in his "affirmative duty" to question the VE as mandated by SSR 00-4p. Moreover, the administrative decision contains the erroneous statement that "[t]he vocational expert stated that her testimony was consistent with data contained in the Dictionary of Occupational Titles" (Tr. 35). While the *Lindsley* court rejected the plaintiff-appellant's argument that the

ALJ's questions regarding information found in the DOT were not sufficiently specific to satisfy the Regulation, it did not address the question of whether the complete omission of the inquiry constitutes reversible error.

In *Lancaster v. Commissioner of Social Security* 2007 WL 1228667, *11 (6th Cir. April 26, 2007), the court remanded on the basis that the ALJ erroneously found that the VE's job findings were "consistent with the DOT" despite the fact that he failed to inquire about such conflicts at the hearing. However, *Lancaster* is distinguishable from this point forward. In the district court, Lancaster argued and discussed actual inconsistencies between the VE's testimony and the DOT, whereas here, Plaintiff has not alleged any inconsistency, but merely the failure to inquire about the presence of conflicts. *Lancaster* skirts the question of whether the failure to pose the "inconsistencies" question, in and of itself, mandates remand, noting that "[c]ourts are divided as to whether the failure to inquire into DOT inconsistencies entitles a Plaintiff to relief." Indeed, there is considerable support for the application of a harmless error rule where the ALJ fails to make the required inquiry regarding the DOT. *See Brown v. Barnhart,* 408 F.Supp.2d 28, 35 (D.D.C. 2006)("[T]here is substantial and persuasive authority that under SSR 00-4p, "the mere failure to ask such a question cannot by itself require remand"); *Hodgson v. Barnhart,* 2004 WL 1529264, at *2 (D.Me. 2004) ("However, the mere failure to ask such a question cannot by itself require remand; such an exercise would be an empty one if the vocational expert's testimony were in fact consistent with the DOT. Only an inconsistency between the testimony and the DOT that affects a plaintiff's claim could reasonably provide the basis for overturning the

-13-

commissioner's decision....");   *Jackson v. Barnhart,* 120 Fed.Appx. 904, 906, 2005 WL

23363 *1 (3ʳᵈ Cir. 2005)("Where substantial evidence supports the ALJ's opinion and where

the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not

reverse the ALJ's decision."); *Tisoit v. Barnhart,* 127 Fed.Appx. 572, 575, 2005 WL 751916,

*2 (3ʳᵈ Cir. 2005)(FN 1)("This Court has not held that mere failure to inquire about the

possibility of an inconsistency under SSR 00-4p mandates reversal."). *But see Teverbaugh*

*v. Commissioner of Social Security,* 258 F.Supp.2d 702, 706 (E.D.Mich. 2003) (Roberts,

J.)("Because the VE's testimony was the only step five evidence that the ALJ relied upon,

the Court cannot rule that there is substantial evidence to support the ALJ's findings").

I note that other circuits have reversed on the basis that the "inconsistencies with the

DOT" question was omitted.   However, in these cases, the ALJ's failure to make the 00-4p

inquiry was coupled with an identifiable inconsistency between the VE's testimony and the

DOT.  *See Haddock v. Apfel,* 196 F.3d 1084, 1087 (10ᵗʰ Cir. 1999); *Prochaska v. Barnhart,*

454 F.3d 731, 736 (7ᵗʰ Cir. 2006).

The present facts support a finding that the ALJ's failure to make the required inquiry

or request DOT codes for the jobs cited by the VE amounts to harmless error.  Counsel's one

page argument that Plaintiff is entitled to remand under SSR 00-4p is unaccompanied by any

allegation that the VE's testimony actually conflicted with the DOT.  Although Plaintiff was

represented by her present counsel at the administrative hearing, the record shows that he did

not raise an objection to the VE's findings or the ALJ's failure to ask if the testimony

-14-

conflicted with the DOT's information.   Likewise, a review of his Appeals Council brief

contains no support for his current SSR 00-4p argument or even a generalized criticism of

the VE's job findings (Tr. 8-9).[6]

There is no evidence in this record that the Plaintiff (already performing a part-time

assistant manager job while attending school) is unable to perform any of the jobs included

in the VE's testimony.   Because Plaintiff does not present a particularly strong case for

benefits, this Court is reluctant to remand on the basis of purely technical errors.   "[W]here

remand would be an idle and useless formality, courts are not required to convert judicial

review of agency action into a ping-pong game." *Wilson v. Commissioner of Social Sec.* 378

F.3d 541, 547 (6th Cir. 2004), *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89

S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion).

This Court notes in closing that its conclusion recommending the grant of summary

judgment to the Commissioner is not intended to trivialize legitimate impairments caused by

Plaintiff's congenital deficiency.   However, the overriding question in this appeal is whether

the Commissioner's decision was supported by substantial evidence.   Based on a review of

this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-

finder at the administrative  level  pursuant to  *Mullen v. Bowen*, *supra*, and should not be

---

[6]Of course, the omission of the SSR 00-4p argument from his Appeals Court brief does not preclude him from raising it here, *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085-86, 147 L.Ed.2d 80 (2000).  In citing the Appeals Council brief, the Court merely notes that because the transcript is devoid of any support for the conclusion that Plaintiff was unable to perform the jobs cited by the VE, the ALJ's error was harmless.

disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment as to claims for both childhood and adult benefits DENIED.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

-16-

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE


Dated:  June 19, 2009


CERTIFICATE OF SERVICE


The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 19, 2009.



S/G. Wilson
Judicial Assistant